UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

FITZGERALD MOTORS, INC.,
for itself and in the name of the Department
of Highway Safety and Motor Vehicles of
the State of Florida, for its use and benefit,

                                        CASE NO.:

     Plaintiff,

v.

GENESIS MOTOR AMERICA, LLC,

     Defendants.

_____

## **COMPLAINT AND DEMAND FOR JURY TRIAL**

Plaintiff, Fitzgerald Motors, Inc., sues Defendant, Genesis Motor America, LLC, and states:

### **Parties**

1.      Plaintiff, Fitzgerald Motors, Inc. ("Fitzgerald"), is a Florida corporation with its principal place of business in Pinellas County, Florida. Fitzgerald is a "motor vehicle dealer" as defined in Section 320.60(11)(a), Florida Statutes. Fitzgerald brings this Complaint for itself with respect to claims for damages and declaratory relief, and in the name of the Department of Highway Safety and Motor Vehicles of the State of Florida for the use and benefit of Fitzgerald with respect to claims for injunctive relief pursuant to 320.695, Florida Statutes.

2.      Defendant, Genesis Motor America, LLC ("GMA"), whose sole member is Hyundai Motor America Corporation ("HMA"), is a California limited liability company with its principal place of business in California. GMA is registered to do business in Florida and is

actively doing business in Pinellas County, Florida.  GMA is a "distributor" as defined in Section 320.60(5), Florida Statutes, a "manufacturer" as defined in Section 320.60(9), Florida Statutes, and a "licensee" as defined in Section 320.60(8), Florida Statutes.

3.      Fitzgerald and GMA are parties to a Genesis Dealer Sales and Service Agreement (the "Genesis Dealer Agreement") pursuant to which Fitzgerald operates a dealership for the sale and service of Genesis brand motor vehicles at the Dealership Location.  The Genesis Dealer Agreement is a "franchise agreement" as defined in Section 320.60(1), Florida Statutes.

## Jurisdiction and Venue

6.      Pursuant to 28 U.S.C. §§ 1331, 1332, and 1367, this Court has jurisdiction over the issues herein raised, and the amount in controversy exceeds $75,000.00.

7.      Pursuant to 28 U.S.C. § 1391(b)(2), venue is proper in this Court, as a substantial part of the events or omissions giving rise to the claim occurred in the Middle District of Florida

## General Allegations

8.      HMA is a subsidiary of Hyundai Motor Company ("HMC").  HMC, through other subsidiaries, manufactures Hyundai and Genesis line-make motor vehicles.  HMA is the sole distributor of Hyundai line-make motor vehicles in the United States.

9.      GMA is a subsidiary of HMA and, since 2018, has been the sole distributor of Genesis line-make motor vehicles in the United States.

10.     Originally, HMC produced Genesis motor vehicles as models of the Hyundai line-make.  These "Hyundai Genesis" models were originally distributed in the United States through HMA and were retailed exclusively by franchised Hyundai dealers, including Fitzgerald, under their respective Hyundai Dealer Sales and Service Agreements.

11.     In 2016, HMA announced that later in the year it would begin to distribute a new model Hyundai, called the "Genesis." Under Florida law, dealers who have a Hyundai franchise have the right to receive from HMA and sell to the public all Hyundai line-make motor vehicles regardless of model. However, HMA unlawfully required Hyundai dealers to execute a "Genesis Participation Agreement" ("GPA") as a precondition to receiving Genesis model motor vehicles from HMA. The one-sided GPA unilaterally created by HMA imposed additional facility, staffing, and training requirements on Hyundai dealers.  HMA's imposition of the GPA on dealers as a precondition to receiving Genesis model motor vehicles violated Sections 320.64(18), (19), and (22), Florida Statutes, which expressly prohibit HMA from conditioning the distribution of Hyundai motor vehicles on dealers' executing an additional agreement.

12.     In 2017, HMA announced its intention to unlawfully withhold Genesis motor vehicles from Hyundai dealers. HMA stated it was abandoning the GPA and would instead establish Genesis as an independent line-make separate from Hyundai, creating GMA, and designating GMA as the sole distributor of Genesis model motor vehicles in the United States in place of HMA.

13.     Additionally, HMA announced that it would cease distributing Genesis model motor vehicles to existing Hyundai dealers and would instead develop a new dealer network for the sale and service of Genesis model motor vehicles.  In establishing this new dealer network, HMA and GMA intended to take Genesis model motor vehicles away from the Hyundai dealer network and instead distribute them to a smaller group of dealers hand-selected by HMA and GMA to be Genesis dealers.  HMA and GMA intended for the new Genesis dealer network to be significantly smaller than the existing Hyundai dealer network and for that newly selected Genesis

dealers to operate in stand-alone facilities separate from Hyundai and any other motor vehicle franchise.

14.     In December 2017, GMA submitted an application with the Florida Department of Highway Safety and Motor Vehicles ("DHSMV") for a license to distribute Genesis motor vehicles in Florida.  However, GMA's application was rejected because HMA and GMA's plan for creating a new Genesis dealer body violated Florida law.

15.     Specifically, under Section 320.6415, Florida Statutes, in the event of a change in a plan or system of distribution (like the change of distribution of Genesis motor vehicles from HMA to GMA), any request for licensure by a potential distributor must be denied "unless the applicant offers to each motor vehicle dealer who is a party to the franchise agreement a new franchise agreement containing substantially the same provisions which were contained in the previous franchise agreement . . . ."  Thus, although Florida law did not prohibit the splitting off of Genesis from Hyundai and the creation of a new line-make, the law did prohibit HMA and GMA from denying existing Hyundai dealers their right to sell and service Genesis model motor vehicles .

16.     Because of HMA and GMA's attempt to violate Florida law and their dealers' rights, the DHSMV refused to approve GMA's application for a distributor license unless HMA and GMA agreed to offer to every existing Florida Hyundai dealer a Genesis Dealer Sales and Service Agreement containing the same terms as existed in their respective Hyundai Dealer Sales and Service Agreements. HMA and GMA ultimately agreed, and the DHSMV granted GMA a license to distribute a newly formed Genesis line-make in Florida.

17.     Upon issuance of its distributor license by the DHSMV, GMA offered Genesis Dealer Sales and Service Agreements to all existing Florida Hyundai dealers.  GMA and Fitzgerald

executed a Genesis Dealer Agreement effective December 20, 2019. Approximately one year later, GMA announced a radical program unlawfully designed to accomplish indirectly what HMA and GMA were prohibited previously from achieving directly – a smaller, hand-selected Genesis dealer body with stand-alone Genesis facilities.

## GMA's Keystone Program

18. In or about January 2020, with no notice, GMA announced a so-called "bonus" program designed to coerce dealers into complying with various demands. To coerce compliance, GMA's Keystone Program unlawfully conditions a majority of dealers' gross margin on whether a dealer complies with or attains various unilaterally set objectives or criteria. More specifically, GMA conditions an amount equal to 10.7% of Manufacturer's Suggested Retail Price ("MSRP") of each Genesis sold.

19. Dealers, including Fitzgerald, that cannot or do not meet GMA's arbitrary and disparate demands forego payment and suffer an increased effective wholesale cost, which places them at a distinct competitive disadvantage as compared to neighboring dealers that meet the demands. Unlike noncomplying dealers, complying dealers benefit from substantially decreased effective wholesale cost, and gain the ability to offer prospective customers substantially lower retail pricing, allowing them to lure customers away from noncomplying dealers.

20. The result of the Keystone Program is unlawful and anti-competitive price discrimination, with certain dealers paying thousands of dollars more than others for goods of like grade and quality, i.e. materially identical motor vehicles. Fitzgerald and other noncomplying dealers to whom these so-called "incentive payments" are not functionally available cannot compete when neighboring complying dealers are able to sell materially identical vehicles at substantially lower prices.

21.     Among the conditions tied to dealer margin, the Keystone Program unlawfully require dealers to construct stand-alone Genesis facilities and to meet arbitrary and unreasonable sales performance objectives.

Facility Requirements

22.     Through the Keystone Program, GMA imposes unreasonable facility requirements unlawfully intended to decrease the dealer body and to coerce Genesis dealers to construct stand-alone Genesis facilities. GMA withholds from dealers so-called "incentive payments," amounting to 8% of MRSP of each Genesis sold, unless the dealer builds a new multi-million dollar stand-alone Genesis facility. The facility requirements are not reasonable or justifiable in light of current and reasonably foreseeable projections of economic conditions, financial expectations, and Fitzgerald's local market.  Indeed, in 2020 GMA arbitrarily and substantially increased dealer Planning Potential, the measure used to establish each dealer's facility requirements, making the Keystone Program facility requirements even more unreasonable.

23.     GMA conditions dealer margin on dealers' complying with GMA's facility standards. Included among the Keystone Program's costly facility obligations is a requirement that dealers construct Genesis-exclusive facilities (the "Keystone Exclusivity Requirement").  This Keystone Exclusivity Requirement obligates Genesis dealers to remove from their facilities the operations of all other line-makes the dealer represents, including the Hyundai line-make distributed by HMA. Complying dealers receive an amount equal to 4% of MSRP of each Genesis sold.

24.     The Keystone Program also has a component called the "Leadership Bonus," which ties an additional amount equal to 4% of MSRP of each Genesis sold to a dealer meeting every component of the Keystone Program, including the facility component.  Thus, in total, GMA will

withhold an amount equal to 8% of MSRP of each Genesis sold from dealers that do not build stand-alone Genesis facilities that comply with Keystone Facility standards. Eight percent (8%) of MSRP of a Genesis amounts to the majority of a dealer's gross margin and can amount to over $6,000 per vehicle.

25.    In withholding from noncompliant dealers 8% of MSRP of each Genesis sold, GMA seeks to coerce Fitzgerald and other dealers to build stand-alone Genesis facilities.

26.    The substantial costs of building stand-alone facilities are not justified by the market realities of the Genesis line-make. In 2020, Fitzgerald on average sold fewer than 3 new Genesis motor vehicles per month. GMA currently distributes only four different models of motor vehicles, and Fitzgerald showcases in its showroom each of those models. The market for the low-volume Genesis line-make does not remotely support Fitzgerald's building an unnecessary multi-million dollar facility.

27.    By tying a substantial portion of dealer margin to such unreasonable facility requirements, GMA intentionally imposes on Fitzgerald and others an untenable dilemma – sink millions of unrecoverable dollars into unjustifiable facility improvements or suffer from substantially higher effective wholesale costs that will render the dealer non-competitive and significantly impair the dealer's substantial investments.

28.    Upon information and belief, GMA exempts certain selected dealers from the Keystone Program facility requirements, entitling those dealers to substantially reduced effective wholesale costs even when they fail to meet the facility components of the Keystone Program.

29.    Access to GMA's substantially reduced effective wholesale pricing, conditioned on unreasonable and selectively-applied facility requirements, is not functionally available to Fitzgerald.

30. Instead, through the Keystone Program, GMA in bad faith seeks to indirectly achieve the same unlawful result they were previously denied under Florida law – taking the Genesis line-make from the Hyundai dealer body, awarding the Genesis line-make to only certain selected dealers, and mandating that those selected dealers sell and service Genesis motor vehicles in stand-alone facilities.

Sales Performance Objectives

31. In addition to unlawfully tying dealer margin to unreasonable facility requirements, GMA unlawfully conditions margin on dealers' meeting arbitrary and unreasonable sales performance objectives.

32. The Retailer Performance Bonus ("RPB") component of GMA's Keystone Program conditions dealer margin on arbitrary and unreasonable monthly and quarterly sales objectives. Through RPB, GMA pays dealers that meet their monthly or quarterly sales objective an amount equal to 1.5% of the MSRP of each vehicle a dealer sells. Through its so-called "Leadership Bonus" GMA ties an additional amount equal to 4% of MSRP of each Genesis sold to a dealer's meeting every component of the Keystone Program, including RPB.

33. GMA unilaterally establishes each dealer's sales objective with reference to the dealer's past performance and an aspirational, unreasonable, and non-localized "growth factor."

34. Through RPB, GMA establishes and implementsd sales performance criteria for Fitzgerald that are unfair, unreasonable, inequitable, and do not consider all relevant and material local and regional criteria, data, and facts; and that fail to consider the sales performance of dealerships of comparable size to Fitzgerald located in comparable markets. For example, RPB unreasonably and arbitrarily ignores, among other material factors, that different dealers face different demographics, different consumer preferences, different lease penetration rates, different

levels of competition (from other Genesis dealers and from competing line-make dealers), and different marketing budgets of competing line-makes.

35.     Not only does GMA impose on Fitzgerald unreasonable monthly sales objectives, but they do so after the beginning of the applicable month in a manner that unfairly prevents Fitzgerald from adequately planning to meet those objectives. For example, in failing to notify Fitzgerald of its monthly objective until after the month has already begun, Fitzgerald has insufficient time to adequately adjust advertising and marketing, secure additional inventory, or increase staffing in an effort to meet its objective.

36.     The effect of the Keystone Program, through conditioning dealer margin on sales performance objectives and facility requirements, is to provide varying per-vehicle "incentives" to Florida Genesis dealers, effectively lowering the effective wholesale price of vehicles for certain Florida Genesis dealers but not others.

37.     Because not all dealers meet GMA's unreasonable criteria, the result of the Keystone Program is to create disparate effective wholesale prices of identical vehicles among Florida Genesis dealers.

38.     Access to GMA's reduced effective wholesale pricing, conditioned on unreasonable, disparate, and manipulated sales performance criteria, is not functionally available to Fitzgerald.

## Modifications to Accelerate and Keystone Programs

39.     GMA continues to announce changes and modifications to the Keystone Program.

40.     These changes amount to modifications of Fitzgerald's franchise agreement pursuant to section 320.641, Florida Statutes, and without proper notice of such modifications provided per applicable law may be voided at Fitzgerald's option.

41.     Additionally, each change to the Keystone Program reaffirms the arbitrary nature of these metrics and the near impossibility for a dealer to comply with all of the requirements that seem to changes at the whim of GMA.

### Complimentary Maintenance Program Reimbursement

42.     In 2016, HMA began including a complimentary maintenance plan, called Hyundai Complimentary Maintenance ("HCM"), with every purchase of a new Genesis model motor vehicle.

43.     When GMA became the distributor of Genesis motor vehicles, GMA continued to include complimentary maintenance, now called Genesis Complimentary Maintenance ("GCM"), with the purchase of Genesis motor vehicles. GCM covers certain maintenance services, including oil changes, oil filter replacements, tire rotations, and multi-point inspections, for three years or 36,000 miles.

44.     Pursuant to Section 320.696, Florida Statutes, Fitzgerald has established reimbursement rates with GMA for labor performed and for parts sold in connection with, *inter alia*, maintenance plans issued by GMA and their common entities.

45.     Pursuant to Section 320.696, Florida Statutes, GMA must reimburse Fitzgerald for labor performed and parts sold in connection with GCM at Fitzgerald's established reimbursement rates.

46.     GMA has reimbursed and continues to reimburse Fitzgerald for labor performed and parts sold in connection with GCM at flat rates unilaterally set by GMA that are substantially below Fitzgerald's established statutory reimbursement rates.

### COUNT I
### GMA's Violation of Section 320.64(42)(a), Florida Statutes

47.     The allegations of paragraphs 1 through 46 are re-alleged as if fully set forth herein.

48.     This Count is an action for damages pursuant to Section 320.697, Florida Statutes, injunctive relief pursuant to Section 320.695, Florida Statutes, and declaratory relief pursuant to 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, Chapter 86, Florida Statutes (Declaratory Judgments), for GMA's violation of Section 320.64(42)(a), Florida Statutes.

49.     Pursuant to Section 320.695, Florida Statutes, to the extent this action seeks injunctive relief, this action is brought by Fitzgerald in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of Fitzgerald.

50.     Florida law provides that a licensee such as GMA has violated the law if it "has established, implemented, or enforced criteria for measuring the sales or service performance of any of its franchised motor vehicle dealers in this state which have a material or adverse effect on any motor vehicle dealer and which [a]re unfair, unreasonable, arbitrary, or inequitable."  Section 320.64(42)(a), Fla. Stat.

51.     As set forth above, the RPB as established, implemented, and enforced by GMA contains sales performance criteria that are unfair, unreasonable, inequitable, and do not consider all relevant and material local and regional criteria, data, and facts.

52.     The RPB objectives, *inter alia*, do not accurately reflect the sales opportunities available to Fitzgerald; rely on a percentage of growth that is arbitrarily established by GMA; utilize averages that by definition impose unequal standards on dealers; fail to consider relevant and material local criteria, data, and facts specific to the market served by Fitzgerald; and fail to consider the performance of other motor vehicle dealers of comparable size to Fitzgerald located in comparable markets.

53.     These unfair, unreasonable, arbitrary, and inequitable objectives have a material and adverse effect on Fitzgerald in that Fitzgerald is not receiving or able to receive the full amount

of the incentives available under the Keystone Program, resulting in Fitzgerald suffering from larger effective wholesale costs for motor vehicles purchased from GMA than do other dealers that receive the full amount of incentives available under the Keystone Program.

54.     GMA's actions violate Section 320.64(42)(a), Florida Statutes.

55.     Section 320.695, Florida Statutes, provides that "notwithstanding the existence of any adequate remedy at law, . . . any motor vehicle dealer in the name of the department and state and for the use and benefit of the motor vehicle dealer" may obtain an injunction "restraining any person . . . from violating or continuing to violate any of the provisions of ss. 320.60-320.70 . . . . A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction."

56.     Accordingly, an injunction restraining GMA from continuing to measure the sales performance of Fitzgerald using unfair, unreasonable, and inequitable objectives under the Keystone Program in violation Section 320.64(42)(a), Florida Statutes is appropriate.

WHEREFORE, Fitzgerald demands:

(a)  pursuant to Section 320.697, Florida Statutes, entry of a judgment against GMA for treble damages;

(b)  pursuant to 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, and Chapter 86, Florida Statutes (Declaratory Judgments), a declaration, order, or judgment that: (1) RPB and the Leadership Bonus contain unfair, unreasonable, arbitrary or inequitable criteria for measuring the performance of Fitzgerald; and (2) GMA's establishment, implementation, or enforcement of RPB and the Leadership Bonus violates Section 320.64(42)(a), Florida Statutes;

(c) pursuant to Section 320.695, Florida Statutes, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of Fitzgerald, entry of an injunction requiring GMA to cease using any unfair, unreasonable, and inequitable criteria for measuring the performance of Fitzgerald for any purposes whatsoever, including, but not limited to, RPB sales objectives and Leadership Bonus under the Keystone Program;

(d) an order awarding to Fitzgerald attorney's fees, interest, costs; and

(e) such other relief this Court deems just and equitable.

### COUNT II
### GMA's Violation of Section 320.64(38), Florida Statutes

57.     The allegations of paragraphs 1 through 46 are re-alleged as if fully set forth herein.

58.     This Count is an action for damages pursuant to Section 320.697, Florida Statutes, injunctive relief pursuant to Section 320.695, Florida Statutes, and declaratory relief pursuant to 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, Chapter 86, Florida Statutes (Declaratory Judgments), for GMA's violation of Section 320.64(38), Florida Statutes.

59.     Pursuant to Section 320.695, Florida Statutes, to the extent this action seeks injunctive relief, this action is brought by Fitzgerald in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of Fitzgerald.

60.     Florida law provides that a licensee such as GMA may "offer a bonus, rebate, incentive, or other benefit program to its dealers in this state which is calculated or paid on a per vehicle basis and is related in part to a dealer's facility or the expansion, improvement, remodeling, alteration or renovation of a dealer's facility." Section 320.64(38), Fla. Stat. If such a program is implemented, "[a]ny dealer who does not comply with the facility criteria . . . is entitled to receive

a reasonable percentage of the . . . incentive . . . offered by the licensee under that program by complying with the criteria or eligibility requirements unrelated to the dealer's facility under that program." Section 320.64(38), Fla. Stat.

61.     Section 320.64(38), Florida Statutes, elaborates on what is to be considered a reasonable percentage, and creates a presumption that it would be reasonable for a licensee to pay eighty percent (80%) of the amount available under an incentive program to a dealer that complies with all incentive criteria other than the facility related criteria.

62.     GMA has refused to pay its dealers who comply with all non-facility criteria a reasonable percentage of the incentives available under the Keystone Program.

63.     Fitzgerald has complied with all Keystone Program criteria other than the Keystone Facility standards (or Fitzgerald's failure to comply with RPB is excused because such criteria violates Florida law).

64.     GMA's refusal to pay Fitzgerald a reasonable percentage of the incentives available under the Keystone Program is a violation of Section 320.64(38), Florida Statutes.

65.     Section 320.64(38), Florida Statutes, also provides that a licensee such as GMA has violated the law if it has offered a bonus or incentive programs to a dealer or dealers in Florida that it does not offer to all other dealers in Florida.

66.     GMA does not make incentive payments under its Keystone Program available to Fitzgerald on the same terms as it does to all other dealers because the objectives assigned to Fitzgerald are unfair, unreasonable, arbitrary, and inequitable.

67.     GMA's refusal to make the incentives payments available under the Keystone Program available to Fitzgerald on the same terms as it does to other dealers is a violation of Section 320.64(38), Florida Statutes.

68.     Section 320.695, Florida Statutes, provides that "notwithstanding the existence of any adequate remedy at law, . . . any motor vehicle dealer in the name of the department and state and for the use and benefit of the motor vehicle dealer" may obtain an injunction "restraining any person . . . from violating or continuing to violate any of the provisions of ss. 320.60-320.70 . . . . A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction."

69.     Accordingly, an injunction restraining GMA from continuing to violate Section 320.64(38), Florida Statutes, by failing to pay Fitzgerald a reasonable amount of the incentives available under the Keystone Program and by failing to make the Keystone Program incentives available to Fitzgerald on the same terms as all other dealers is appropriate.

WHEREFORE, Fitzgerald demands:

(a)  pursuant to Section 320.697, Florida Statutes, entry of a judgment against GMA for treble damages;

(b)  pursuant to 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, and Chapter 86, Florida Statutes (Declaratory Judgments), a declaration, order, or judgment that: (1) GMA fails to pay Fitzgerald a reasonable percentage of the bonuses, incentives, rebates, or other benefits available under the Keystone Program in violation of Section 320.64(38), Florida Statutes; and (2) in implementing unfair, unreasonable, arbitrary, inequitable and otherwise unlawful performance objectives and facility requirements, GMA fails or refuses to offer to Fitzgerald all bonuses and incentives available under the Keystone Program in violation of Section 320.64(38), Florida, Statutes;

(c) pursuant to Section 320.695, Florida Statutes, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of Fitzgerald, entry of an injunction: (1) requiring that GMA pay Fitzgerald a reasonable percentage of the incentives available under the Keystone Program for so long as GMA continues to offer the Keystone Program or comparable program to all other dealers in Florida; and (2) requiring that GMA make equally available to Fitzgerald all incentives available under the Keystone Program by ceasing the application of unfair, unreasonable, arbitrary, and inequitable sales objectives and sales efficiency calculations;

(d) an order awarding to Fitzgerald attorney's fees, interest, costs; and

(e) such other relief this Court deems just and equitable.

## COUNT III
### GMA's Violation of Section 320.64(18), Florida Statutes

70.     The allegations of paragraphs 1 through 46 are re-alleged as if fully set forth herein.

71.     This Count is an action for damages pursuant to Section 320.697, Florida Statutes, injunctive relief pursuant to Section 320.695, Florida Statutes, and declaratory relief pursuant to 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, Chapter 86, Florida Statutes (Declaratory Judgments), for GMA's violation of Section 320.64(18), Florida Statutes.

72.     Pursuant to Section 320.695, Florida Statutes, to the extent this action seeks injunctive relief, this action is brought by Fitzgerald in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of Fitzgerald.

73.     Section 320.64(18), Florida Statutes, provides that a licensee such as GMA has violated the law if it has established a system of distribution of motor vehicles which is "unfair,

16

inequitable, unreasonably discriminatory, or not supportable by reason and good cause after considering the equities of the affected motor vehicles dealer or dealers."

74.     As set forth above, through the Keystone Program and RPB, GMA imposes on Fitzgerald unfair, inequitable, and unreasonably discriminatory sales performance criteria and facility requirements that are not supportable by reason and good cause, and, as a result, Fitzgerald is not receiving or able to receive the full amount of the incentives available under the Keystone Program (including, but not limited to, the Leadership Bonus).

75.     GMA's establishment and implementation of the Keystone Program, including RPB and Keystone Facility standards incentives, results in a system of distribution on the part of GMA that is unfair, inequitable, unreasonably discriminatory, or not supportable by reason and good cause, and results in disparate dealer cost of motor vehicles sold by GMA to its Florida dealers, including Fitzgerald.

76.     GMA's actions violate Section 320.64(18), Florida Statutes.

77.     Section 320.695, Florida Statutes, provides that "notwithstanding the existence of any adequate remedy at law, . . . any motor vehicle dealer in the name of the department and state and for the use and benefit of the motor vehicle dealer" may obtain an injunction "restraining any person . . . from violating or continuing to violate any of the provisions of ss. 320.60-320.70 . . . . A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction."

78.     Accordingly, an injunction restraining GMA from offering discounts not equally available to Fitzgerald and restraining GMA from imposing on Fitzgerald unfair and arbitrary monthly sales objectives and unreasonable facility requirements for purposes of incentives

available under the Keystone Program and RPB in violation Section 320.64(18), Florida Statutes, is appropriate.

WHEREFORE, Fitzgerald demands:

(a) pursuant to Section 320.697, Florida Statutes, entry of a judgment against GMA for treble damages;

(b) pursuant to 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, and Chapter 86, Florida Statutes (Declaratory Judgments), a declaration, order, or judgment that GMA has established or implemented a system of motor vehicle distribution that is, by means of the Keystone Program, unfair, inequitable, unreasonably discriminatory, or not supportable by reason and good cause after considering the equities of Fitzgerald in violation of Section 320.64(18), Florida Statutes;

(c) pursuant to Section 320.695, Florida Statutes, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of Fitzgerald, entry of an injunction restraining GMA from offering discounts not equally available to Fitzgerald and restraining GMA from imposing on Fitzgerald unfair and arbitrary sales objectives and unreasonable facility requirements for purposes of incentives available under the Keystone Program;

(d) an order awarding to Fitzgerald attorney's fees, interest, costs; and

(e) such other relief this Court deems just and equitable.

**COUNT IV**
**GMA's Violation of Section 320.64(37), Florida Statutes**

79. The allegations of paragraphs 1 through 46 are re-alleged as if fully set forth herein.

80.     This Count is an action for damages pursuant to Section 320.697, Florida Statutes, injunctive relief pursuant to Section 320.695, Florida Statutes, and declaratory relief pursuant to 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, Chapter 86, Florida Statutes (Declaratory Judgments), for GMA's violation of Section 320.64(37), Florida Statutes.

81.     Pursuant to Section 320.695, Florida Statutes, to the extent this action seeks injunctive relief, this action is brought by Fitzgerald in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of Fitzgerald.

82.     Section 320.64(37), Florida Statutes, provides that a licensee such as GMA has violated the law if it has

> refused to allow or has limited or restricted a motor vehicle dealer from acquiring or adding a sales or service operation for another line-make of motor vehicle at the same or expanded facility unless . . . the licensee can demonstrate that such refusal, limitation, or restriction is justified by consideration of reasonable facility and financial requirements and the dealer's performance for existing line-make.

83.     Through the Keystone Program and the Keystone Facility standards, including the Keystone Exclusivity Requirement, GMA has limited or restricted Fitzgerald's ability to operate its Genesis sales and service operation at the Dealership Location without any lawful justification.

84.     GMA's actions violate Section 320.64(18), Florida Statutes.

85.     Section 320.695, Florida Statutes, provides that "notwithstanding the existence of any adequate remedy at law, . . . any motor vehicle dealer in the name of the department and state and for the use and benefit of the motor vehicle dealer" may obtain an injunction "restraining any person . . . from violating or continuing to violate any of the provisions of ss. 320.60-320.70 . . . . A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction."

86.     Accordingly, an injunction restraining GMA from implementing the Keystone Facility standards, including the Keystone Exclusivity Requirement, in violation Section 320.64(37), Florida Statutes, is appropriate.

WHEREFORE, Fitzgerald demands:

(a)  pursuant to Section 320.697, Florida Statutes, entry of a judgment against GMA for treble damages;

(b)  pursuant to 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, and Chapter 86, Florida Statutes (Declaratory Judgments), a declaration, order, or judgment that GMA, through the Keystone Program, refused to allow or has limited or restricted Fitzgerald from acquiring or adding another line-make sales or service operation at its Genesis facility in violation of Section 320.64(37), Florida Statutes;

(c)  pursuant to Section 320.695, Florida Statutes, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of Fitzgerald, entry of an injunction restraining GMA from implementing the Keystone Exclusivity Requirement;

(d)  an order awarding to Fitzgerald attorney's fees, interest, costs; and

(e)  such other relief this Court deems just and equitable.

**COUNT V**
**GMA's Violation of Section 320.64(6), Florida Statutes**

87.     The allegations of paragraphs 1 through 46 are re-alleged as if fully set forth herein.

88.     This Count is an action for damages pursuant to Section 320.697, Florida Statutes, injunctive relief pursuant to Section 320.695, Florida Statutes, and declaratory relief pursuant to

28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, Chapter 86, Florida Statutes (Declaratory Judgments), for GMA's violation of Section 320.64(6), Florida Statutes.

89.     Pursuant to Section 320.695, Florida Statutes, to the extent this action seeks injunctive relief, this action is brought by Fitzgerald in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of Fitzgerald.

90.     Section 320.64(6), Florida Statutes, provides that a licensee such as GMA has violated the law if it has "coerced or attempted to coerce any motor vehicle dealer to enter into any agreement with the licensee."

91.     By tying incentives in the Keystone Program to the Keystone Facility standards and the Keystone Exclusivity Requirement and placing dealers who do not comply with such requirements at a cost disadvantage relative to dealers who receive the full amount of the Keystone Program incentives, GMA has attempted to coerce Fitzgerald to enter into an agreement with GMA to remove Genesis from the Dealership Location and to construct a facility compliant with the Keystone Facility standards.

92.     GMA's actions violate Section 320.64(6), Florida Statutes.

93.     Section 320.695, Florida Statutes, provides that "notwithstanding the existence of any adequate remedy at law, . . . any motor vehicle dealer in the name of the department and state and for the use and benefit of the motor vehicle dealer" may obtain an injunction "restraining any person . . . from violating or continuing to violate any of the provisions of ss. 320.60-320.70 . . . . A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction."

94.     Accordingly, an injunction restraining GMA from implementing the Keystone Facility standards, including the Keystone Exclusivity Requirement, in violation Section 320.64(6), Florida Statutes, is appropriate.

WHEREFORE, Fitzgerald demands:

(a)  pursuant to Section 320.697, Florida Statutes, entry of a judgment against GMA for treble damages;

(b)  pursuant to 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, and Chapter 86, Florida Statutes (Declaratory Judgments), a declaration, order, or judgment that GMA, through the Keystone Program, has coerced or attempted to coerce Fitzgerald to enter into an agreement with GMA in violation of Section 320.64(6), Florida Statutes;

(c)  pursuant to Section 320.695, Florida Statutes, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of Fitzgerald, entry of an injunction restraining GMA from implementing the Keystone Program, including the Keystone Exclusivity Requirement;

(d)  an order awarding to Fitzgerald attorney's fees, interest, costs; and

(e)  such other relief this Court deems just and equitable.

**COUNT VI**
**GMA's Violation of Section 320.64(10)(b), Florida Statutes**

95.     The allegations of paragraphs 1 through 46 are re-alleged as if fully set forth herein.

96.     This Count is an action for damages pursuant to Section 320.697, Florida Statutes, injunctive relief pursuant to Section 320.695, Florida Statutes, and declaratory relief pursuant to

28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, Chapter 86, Florida Statutes (Declaratory Judgments),

for GMA's violation of Section 320.64(10)(b), Florida Statutes.

97.     Pursuant to Section 320.695, Florida Statutes, to the extent this action seeks

injunctive relief, this action is brought by Fitzgerald in the name of the Florida Department of

Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of Fitzgerald.

98.     Section 320.64(10)(b), Florida Statutes, provides that a licensee such as GMA:

> may not require a motor vehicle dealer, by agreement, program, policy, standard or
> otherwise, to make substantial changes, alterations, or remodeling to, or to replace
> a motor vehicle dealer's sales or service facilities unless the licensee's requirements
> are reasonable and justifiable in light of the current and reasonable foreseeable
> projections of economic conditions, financial expectations, and the motor vehicle
> dealer's market for the licensee's motor vehicles.

99.     By tying incentives in the Keystone Program to facility requirements, including the

Keystone Exclusivity Requirement, and by placing dealers who do not comply with such

requirements at a cost disadvantage relative to dealers who receive full Keystone Program

incentives, GMA has required Fitzgerald to make substantial changes to its facilities and to create

a Genesis-exclusive sales and service facility compliant with Keystone Facility standards.  These

requirements are not reasonable and justifiable in light of current and reasonably foreseeable

projections of economic conditions, financial expectations, and Fitzgerald's market for Genesis

motor vehicles.

100.     GMA's actions violate Section 320.64(10)(b), Florida Statutes.

101.     Section 320.695, Florida Statutes, provides that "notwithstanding the existence of

any adequate remedy at law, . . . any motor vehicle dealer in the name of the department and state

and for the use and benefit of the motor vehicle dealer" may obtain an injunction "restraining any

person . . . from violating or continuing to violate any of the provisions of ss. 320.60-320.70 . . . .

A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction."

102.    Accordingly, an injunction restraining GMA from implementing the Keystone Exclusivity Requirement in violation Section 320.64(10)(b), Florida Statutes, is appropriate.

WHEREFORE, Fitzgerald demands:

(a)  pursuant to Section 320.697, Florida Statutes, entry of a judgment against GMA for treble damages;

(b)  pursuant to 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, and Chapter 86, Florida Statutes (Declaratory Judgments), a declaration, order, or judgment that: (1) GMA, by means of the Keystone Program, requires Fitzgerald to make substantial changes, alterations, or remodeling to its sales or service facilities; and (2) the substantial changes, alterations, or remodeling to Fitzgerald's sales or service facilities required by GMA are not reasonable and justifiable in light of the current and reasonable foreseeable projections of economic conditions, financial expectations, and Fitzgerald's market for GMA's motor vehicles, in violation of Section 320.64(10)(b), Florida Statutes;

(c)  pursuant to Section 320.695, Florida Statutes, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of Fitzgerald, entry of an injunction restraining GMA from implementing the Keystone Program, including the Keystone Exclusivity Requirement;

(d)  an order awarding to Fitzgerald attorney's fees, interest, costs; and

(e)  such other relief this Court deems just and equitable.

24

## COUNT VII
### GMA's Violation of Section 320.696, Florida Statutes

103.    The allegations of paragraphs 1 through 46 are re-alleged as if fully set forth herein.

104.    This Count is an action for damages pursuant to Section 320.697, Florida Statutes, injunctive relief pursuant to Section 320.695, Florida Statutes, and declaratory relief pursuant to 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, Chapter 86, Florida Statutes (Declaratory Judgments), for GMA's violation of Section 320.696, Florida Statutes.

105.    Pursuant to Section 320.695, Florida Statutes, to the extent this action seeks injunctive relief, this action is brought by Fitzgerald in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of Fitzgerald.

106.    Section 320.696, Florida Statutes, requires that a licensee such has GMA must compensate a dealer for labor and parts in connection with work performed by a motor vehicle dealer "to maintain or repair a licensee's product under a warranty or maintenance plan . . . issued by the licensee or its common entity . . . ."  § 320.696(1), Fla. Stat.

107.    GCM is a maintenance plan issued by GMA or its common entity.

108.    Pursuant to Section 320.696(3) and (4), Florida Statutes, Fitzgerald has established reimbursement rates with GMA for labor performed and for parts sold in connection with covered work under Florida law.

109.    Despite these established rates, GMA has reimbursed and continues to reimburse Fitzgerald for labor performed and parts sold pursuant to GCM at rates substantially below what GMA owes Fitzgerald for that work pursuant to Fitzgerald's established statutory reimbursement rates.

110.    GMA's refusal to pay Fitzgerald at Fitzgerald's established rates for labor performed and parts sold under the GCM is a violation of Section 320.696, Florida Statutes.

111.    Section 320.695, Florida Statutes, provides that "notwithstanding the existence of any adequate remedy at law, . . . any motor vehicle dealer in the name of the department and state and for the use and benefit of the motor vehicle dealer" may obtain an injunction "restraining any person . . . from violating or continuing to violate any of the provisions of ss. 320.60-320.70 . . . . A single act in violation of the provisions of ss. 320.60-320.70 shall be sufficient to authorize the issuance of an injunction."

112.    Accordingly, an injunction requiring GMA to pay Fitzgerald its established rates for work performed under the HCM as required by Section 320.696, Florida Statutes, is appropriate.

WHEREFORE, Fitzgerald demands:

(a)  pursuant to Section 320.697, Florida Statutes, entry of a judgment against GMA for treble damages;

(b)  pursuant to 28 U.S.C. §§ 2201-2202, Fed. R. Civ. P. 57, and Chapter 86, Florida Statutes (Declaratory Judgments), a declaration, order, or judgment that: (1) work Fitzgerald performs pursuant to GCM is worked covered under Section 320.696, Florida Statutes; (2) GMA must reimburse Fitzgerald for work performed pursuant to GCM at Fitzgerald's established statutory reimbursement rates; and (3) GMA failed to reimburse Fitzgerald for work performed pursuant to GCM at Fitzgerald's established statutory reimbursement rates in violation of Section 320.696, Florida Statutes;

(c)  pursuant to Section 320.695, Florida Statutes, in the name of the Florida Department of Highway Safety and Motor Vehicles and the State of Florida for the use and benefit of Fitzgerald, entry of an injunction requiring GMA to

reimburse Fitzgerald at its established rates for work performed pursuant to the

GCM as required by Section 320.696, Florida Statutes;

(d)  an order awarding to Fitzgerald attorney's fees, interest, costs; and

(e)  such other relief this Court deems just and equitable.

**COUNT VIII**
**GMA's Violation of Robinson-Patman Act, 15 U.S.C. § 13(a)**

113.    The allegations of paragraphs 1 through 46 are re-alleged as if fully set forth herein.

114.    This Count is a claim arising under Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a) and 26, for GMA's violations of the Robinson-Patman Act, 15 U.S.C. § 13(a).

115.    GMA is a motor vehicle distributor engaged in the sale of motor vehicles in interstate commerce.  The GMA motor vehicles sold to Fitzgerald and its competitors are manufactured outside the state of Florida and transported across state lines to Fitzgerald and its competitors for resale to consumers.

116.    By way of the Keystone Program, GMA has sold motor vehicles of like grade and quality in contemporaneous interstate sales to competitors of Fitzgerald at lower prices than the prices at which those motor vehicles are sold to Fitzgerald.

117.    Fitzgerald competes with other Genesis dealers in the West Central Florida market and elsewhere that pay lower prices for Genesis motor vehicles as a result of the Keystone Program.

118.    The effect of GMA's unlawful discrimination has been substantially to lessen competition between and among Fitzgerald and the other Genesis dealers with which it competes. The favored dealers who receive discounts by way of the Keystone Program have lowered their retail prices to reflect their lower effective wholesale cost, forcing Fitzgerald to lose sales, reduce its margins, or both.

119.   The discounts provided to competing Genesis dealers by way of the Keystone Program are not functionally available to Fitzgerald.

120.   The favored dealers who receive discounts by way of the Keystone Program provide no service or savings to GMA which are not provided in identical kind by Fitzgerald.  Each affected dealer maintains an inventory of purchased motor vehicles on dealership property and competes to sell and service Genesis motor vehicles in accordance with Genesis Sales and Service Agreements.

121.   As a direct and proximate result of GMA's violations of the Robinson-Patman Act, Fitzgerald has suffered injury to its business and property in the form of (a) lost sales to favored competitors and/or (b) lost profit margin in an attempt to prevent the loss of such sales. Fitzgerald's injury is of the kind the Robinson-Patman Act was designed to prevent and flows from that which makes GMA's conduct unlawful.

WHEREFORE, Fitzgerald demands entry of a judgment against GMA (a) declaring that GMA has violated the Robinson-Patman Act, 15 U.S.C. § 13(a), by and through its continued implementation of discriminatory price discounts under and pursuant to the Keystone Program; (b) enjoining, pursuant to 15 U.SC. § 26, GMA's continued implementation of discriminatory pricing through the Keystone Program or otherwise; (c) awarding attorney's fees and costs pursuant to 15 U.S.C. § 15(a) and 15 U.S.C. § 26; and (d) granting such other relief this Court deems just and equitable.

## **Jury Trial Demand**

Plaintiff hereby demands trial by jury of all matters so triable.

Respectfully submitted this 23rd day of April, 2021.

/s/ John W. Forehand
John W. Forehand (Fla. Bar No. 979813)
jforehand@kfb-law.com
R. Craig Spickard (Fla. Bar No. 721751)
cspickard@kfb-law.com
Kurkin Forehand Brandes LLP
315 South Calhoun Street, Suite 850
Tallahassee, FL  32301
Telephone: (850) 391-5060
Facsimile: (850) 391-2645